In the Matter of the GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Respondent-Appellant, v THOMAS J. KIERNAN, as Assessor of the Town of Horseheads, et al., Appellants-Respondents, and HORSEHEADS CENTRAL SCHOOL DISTRICT, Intervenor-Respondent-Appellant.

Third Department, March 5, 1981

APPEARANCES OF COUNSEL

*Levy, Feldman & Licata, P. C. (David M. Levy* of counsel), for Horseheads Central School District, intervenor-respondent-appellant.

*Louis J. Mustico, Town Attorney,* for Thomas J. Kiernan and others, appellants-respondents.

*Sayles, Evans, Brayton, Palmer & Tifft (Edward B. Hoffman* of counsel), for the Great Atlantic & Pacific Tea Company, Inc., respondent-appellant.

MAHONEY, P. J.

This tax certiorari proceeding involves one of the world's largest food processing plants. It was constructed in the mid-1960's by the Great Atlantic & Pacific Tea Company (A & P) in the Town of Horseheads in New York State's "Southern Tier". Pursuant to article 7 of the Real Property Tax Law, A & P sought a review of the tax assessments levied by the town for the years 1974 through 1978. The petitions alleged that in each year the town overvalued the plant and used a discriminating full value percentage rate to assess the subject property. The trial court found the full value of the plant for each of the years involved to be $15,000,000 and, further, determined the correct equalization rates for the years at issue to be lower than those employed by the town, which were the rates established by the State Board of Equalization and Assessment (SBEA). The town and intervenor-respondent Horseheads Central School District appeal from the entire order for each year, while petitioner cross-appeals from each order insofar as each sets the fair market value of the plant at $15,000,000 and from the assessed valuation based thereon. Initially, we note that no extended discussion is warranted to establish that the trial court was correct in determining that market value, rather than capitalization of income or reproduction cost less depreciation, was the most reliable indicator of full value of the subject property for tax assessment purposes. The Court of Appeals in *Matter of Great Atlantic & Pacific Tea Co. v Kiernan* (42 NY2d 236), a case involving a 1973 valuation of the same property, held that the plant was not a specialty and that the mandate of section 306 of the Real Property Tax Law that "all real property in each assessing unit shall be assessed at the full value thereof" would best be carried out by employing the market value approach.*

Next, the same reasons that support the trial court's conclusion that market value is the appropriate methodology for tax assessment purposes, support petitioner's con-

---

* For a lengthy discussion of the reasons why this huge plant does not qualify as a "specialty", see *Matter of Great Atlantic & Pacific Tea Co. v Kiernan* (42 NY2d 236, *supra*).

tention, accepted by the trial court, that the highest and best use of the subject property is as a general manufacturing and warehousing structure. The issue is not what the highest and best use of the complex is to the petitioner, but its highest value in the marketplace *(Matter of Hellerstein v Assessor of Town of Islip*, 37 NY2d 1, mod 39 NY2d 920; *Matter of Onondaga County Water Dist. v Board of Assessors of Town of Volney*, 45 AD2d 258, 261). As the Court of Appeals stated in *Matter of Great Atlantic & Pacific Tea Co. v Kiernan (supra*, p 240) "if no great expense would be entailed in converting the property from the present owner's use to other business and industrial uses and if a market value may be ascertained, property should not be valued as a specialty merely because it contains such features as interior railroad sidings * * * or other amenities * * * which are not truly unique to the owner's business". Here, since the subject property could easily and without unusual costs be adapted to other business uses, its highest and best use is as a general manufacturing structure.

Having succeeded in establishing a relative market for the plant, petitioner presented comparable sales in keeping with the existence of a broad regional market for structures adaptable to general manufacturing and warehousing purposes *(Matter of Great Atlantic & Pacific Tea Co. v Kiernan, supra*, p 242). Since respondents did not question the use of comparable sales, but only challenged the adjustments of the comparables to the A & P plant, and, further, presented no evidence of valuation of the structure using the market approach, we need only determine if the trial court fairly exercised its discretion in holding that petitioner sustained its burden of submitting evidence to the effect that the plant was overvalued and thus overassessed. We conclude that the trial court fairly and equitably evaluated petitioner's proof of comparables after permitting searching cross-examination of petitioner's expert witnesses. The proof adduced accurately reflected the "economic realism" which is the keystone of assessment review (cf. *Matter of Broadway-Saranac Lake Corp. v Board of Assessors of Saranac Lake*, 43 AD2d 649).

In fixing the market value of the subject property at

$15,000,000, the trial court was correct in excluding certain special features of the structure from taxation on the ground they were not essential to the support of the building or its superstructure and were removable without injury thereto (cf. *Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N. Y.*, 16 NY2d 222; Real Property Tax Law, § 102, subd 12, par [f]). Next, while it was error for the trial court to exclude from evidence the mortgage on petitioner's property, such error is harmless since we have held that many and varied factors not relevant to true value may provide the reasons for mortgage loans and that such uncertainty detracts from the evidentiary value to be accorded a mortgage in a tax assessment proceeding *(Matter of River House Co. v Assessor of City of Binghamton*, 56 AD2d 980, mot for lv to app den 42 NY2d 811). Further, since the Court of Appeals in the 1973 review of the assessment of the same structure *(Matter of Great Atlantic & Pacific Tea Co. v Kiernan*, 42 NY2d 236, *supra)* fixed the value of the plant at $13,-900,000, it was not unrealistic for the trial court to adjust the value upward to $15,000,000 since petitioner's appraisers did not make a significant adjustment for the fact that the subject structure was constructed of prestressed, precast concrete beams while the comparables were made of metal construction. Indeed, one of respondents' expert witnesses expressed the opinion that the cost of concrete is nearly double that of metal construction. Given these facts and the pragmatic, realistic view that realty of this kind is increasing in value, we conclude that the trial court did not err in placing a market value of $15,000,000 on the food processing plant.

Finally, with respect to inequality, we conclude that petitioner sustained its burden of proving that the tax assessment rate was discriminatory. The trial court erred in comparing the assessment rates as arrived at by petitioner from an actual sales survey and the State equalization rate offered by respondents. The 1979 amendment to section 720 of the Real Property Tax Law, applicable to this proceeding, excludes proof of the State equalization rate in article 7 proceedings. Thus, the only proof properly before the trial court was petitioner's evidence of actual

sales. Such proof consisted of a survey of sales in the Town of Horseheads for the five years in question and was taken from the town assessor's records. It is for the trial court to determine the weight, if any, to be given to the proof presented, and we conclude that the court was justified in relying on petitioner's evidence because it was similar to actual sales proof deemed reliable in a number of other cases (cf. *Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, mot for rearg den 37 NY2d 924; *Matter of Hellerstein v Assessor of Town of Islip*, 37 NY2d 1, 9, *supra; Guth Realty v Gingold*, 34 NY2d 440, 449). However, we are unable to accept the assessed values for the subject property for the years 1974, 1975, 1976 and 1977. In each of these years, the trial court established an equalization rate lower than that sought in the petition and, of course, such lower rate resulted in an assessed value lower than that demanded by A & P. As we stated in *Matter of J. C. P. Leasing Co. v Browne* (45 AD2d 129, 131, mot for lv to app den 35 NY2d 643): "It is well settled that no reduction may be granted in excess of the amount demanded in the application to the assessors". Accordingly, for the years 1974 through 1977 the assessed value must be increased to the amount demanded in the petition.

The orders reducing tax assessments for the years 1974, 1975, 1976 and 1977 should be modified, on the law, by increasing the amount of the assessed value fixed by said orders to the amount demanded in the petition, and, as so modified, affirmed, without costs; the order reducing tax assessment for the year 1978 should be affirmed, without costs.

SWEENEY, KANE, WEISS and HERLIHY, JJ., concur.

Orders reducing tax assessments for the years 1974, 1975, 1976 and 1977 modified, on the law by increasing the amount of the assessed value fixed by said orders to the amount demanded in the petition, and, as so modified, affirmed, without costs; order reducing tax assessment for the year 1978 affirmed, without costs.